No. 3065

Second Circuit

----

WINNFIELD FURNITURE COMPANY, LTD., v. OTTO

----

(February 3, 1928. Opinion and Decree.)

----

(*Syllabus by the Editor*)

1. Louisiana Digest—Appeal—Par. 625.

The finding of the trial court on matters of fact, where not clearly erroneous, is affirmed.

Appeal from the Eighth Judicial District Court of Louisiana, Parish of Winn. Hon. F. E. Jones, Judge.

Action by Winnfield Furniture Company, Ltd., against Paul Otto.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Eugene Beck, of Winnfield, attorney for plaintiff, appellee.

Moss & Moss, of Winnfield, attorneys for defendant, appellant.

ODOM, J.    Plaintiff    brought    suit against defendant for $135.00 on account, the items on which are one coffin for defendant's wife $75.00, embalming $45.00, and for hearse $15.00.

Defendant answered admitting that he purchased from plaintiff a casket for his deceased wife, but alleges he agreed to pay only $45.00 for the same, and that he employed defendant to embalm the remains of his wife and agreed to pay him $45.00 therefor, and admits that defendant carried the remains of his wife in a hearse from his residence to the railroad station preparatory to its being shipped to Missouri for interment, but denies that he is due plaintiff anything, for the reason that plaintiff failed to properly embalm the body, and that due to plaintiff's want of skill or neglect in embalming the body it was in bad condition when it reached Missouri, the place of interment, and had to be re-embalmed at an expense of $75.00; and that the handles on the box containing the casket were fastened upside down, so that it could not be handled, and that the railroad companies at the stations where changes in shipment had to be made refused to receive the remains, and that on one occasion those handling the box dropped it, due to the fact that the handles were improperly fastened on; and further, that the burial of the body was delayed

on account of its being necessary to re-embalm it, all of which, it is alleged, caused him great mental pain and anguish, for which he reconvened for damages in the sum of $4050.00, itemized as follows:

Mental suffering, disappointment, mortification and humiliation caused by the fault of plaintiff in failing to properly embalm the body, $2500.00; expenses paid for embalming the body in Missouri, $50.00; mental suffering, vexation and humiliation caused defendant in transit with said corpse, due to plaintiff's failure to properly prepare the box containing the casket, $500.00; mental suffering and mortification caused him when the box was dropped, $500.00; and $500.00 damages for delay of the funeral.

The lower court gave plaintiff judgment for $105.00 and rejected defendant's reconventional demand; from which judgment defendant, reconvenor, appealed.

It is undisputed that plaintiff sold defendant a casket for his deceased wife, the price of which, plaintiff says, was $75.00. But the testimony shows that the clerk who sold the casket priced it to defendant at $45.00 and that defendant did not agree to pay him more than that; so that the lower court, it seems, allowed plaintiff only $45.00, which was correct.

It is also undisputed that plaintiff contracted to embalm the body for $45.00 and sent to Alexandria for a licensed embalmer who, plaintiff contends, properly embalmed it according to contract.

Plaintiff also furnished its hearse and carried the remains to the railroad station for shipment, and while there was no agreement as to what it should receive for such service, the testimony shows that $15.00 was the usual charge, and we think the lower court properly allowed that.

The judgment of the lower court is therefore correct as to the first and last items on the bill, and correct as to the other unless it be held that the body was not embalmed properly.

The testimony shows that Mr. Walshe, the president of the plaintiff company, is a licensed, competent embalmer, but for some reason, not stated, he sent to Alexandria and got Mr. Tannehill to take charge of and prepare the body of defendant's wife for shipment and final interment in Missouri. Tannehill is a young man, but a licensed embalmer under the laws of the state, and had been engaged in that business in Alexandria for about eight months.

He testified that he embalmed the body according to the approved methods and left it in as good condition as could be expected under the circumstances.

Mr. E. W. Hixon, of Alexandria, was called by plaintiff as an expert. He testified that he was an embalmer by trade or profession and was licensed and had been so engaged for about eighteen years; that young Tannehill was employed by his firm as an embalmer and that he was competent, had been employed by his firm for about eight months and had done a great deal of work for the firm, and that this was the first complaint ever made as to his work; and he gave it as his opinion that the body was skillfully and properly embalmed, although he did not see it.

The body was embalmed at Winnfield on Saturday night, Tannehill being engaged in the work from about 9:30 to 12:20 next morning. It was shipped out the next morning at about 6 o'clock and reached its destination in Missouri on Monday afternoon. When it reached there the casket was opened and the body found in bad condition, requiring additional attention which was given by an undertaker there.

The attention of both Tannehill and Hixon was called to this fact, and they were asked to explain why the body was in bad condition when it reached Missouri if it had been properly embalmed at Winnfield before shipment. They explained that in cases of this kind, where the cause of death was influenza and pneumonia, it was almost impossible to get perfect results, and that the best experts could not be sure, under like conditions, that the body would remain preserved as they left it, due to certain chemical changes which sometimes take place in human bodies after being embalmed where the cause of death is influenza and pneumonia following childbirth, as in this case.

Mr. Hixon, as an expert, testified that reputable embalmers do not and cannot guarantee results; that during his experience, covering many years, he had on numerous occasions been called upon to administer additional treatment to bodies already embalmed; that such was not unusual and not unexpected.

As defendant's reconventional demand is based solely upon the proposition that the body of his wife was not properly and skillfully embalmed, the burden of proof was upon him to show that fact.

He introduced the testimony of Mr. Starnes, Mr. Fox and Mr. Bear, all of Missouri, taken by commission. Starnes and Fox are morticians, and testified that the body was in bad condition when it reached there, and, further, that if the body had been properly embalmed it would not have been in such condition when they saw it. Mr. Bear was Starnes' helper, but seemed to know but little. We note that cross-interrogatories were propounded to these witnesses but not an-

swered. One of the cross-interrogatories propounded was this: "Is it more difficult to embalm a corpse who died from pneumonia than from any other cause?" As stated, this was not answered.

It is not shown that Starnes and Fox were aware of the disease from which Mrs. Otto died. Both Tannehill and Hixon testified that it is more difficult to embalm bodies where the cause of death is influenza or pneumonia and that it is frequently impossible to get perfect results where either of these diseases caused the death.

The testimony does not satisfy us that plaintiff was negligent or unskillful in its handling of the body, and reconvenor's case must therefore fall on that point.

The testimony shows that at least one of the handles on the box containing the casket was fastened upside down. That is a trifling matter which could have caused no injury.

Having reached this conclusion, it is not necessary, of course, to discuss the question of damages. However, on the question of mental suffering and humiliation, which is the only basis for the claim for damages, defendant made rather a poor showing. When asked if the letting of the box fall by the railroad employees caused him "mental pain and anguish," he answered: "I think so." And he was asked: "When you got to Springfield, Missouri, was the condition of your wife's body in such a condition to have a mental effect on you?" and he answered: "Well, it didn't help me any." Asked if the delay in burial had any mental effect on him, he said: "Yes, I think so."

We cannot say that the judge of the lower court manifestly erred in his judgment, and it is affirmed with costs.